14 A.3d 650

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Joel Desingco LARA.

Misc. Docket AG No. 14 Sept. Term, 2010.

Court of Appeals of Maryland.

March 4, 2011.

Argued by Raymond A. Hein, Deputy Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for Petitioner.

No argument on behalf of the Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BATTAGLIA, J.

Joel Desingco Lara, Respondent, was admitted to the Bar of this Court on December 13, 1995. On December 29, 2009, the Attorney Grievance Commission ("Petitioner" or "Bar Counsel"), acting pursuant to Maryland Rule 16–751(a),[1] filed a "Petition for Disciplinary or Remedial Action" against Lara, charging numerous violations of the Maryland Rules of Professional Conduct ("Rule"), including Rule 1.3 (Diligence),[2] Rules 1.4(a) and (b) (Communication),[3] Rules 1.15(a), (c), and (d) (Safekeeping Property),[4] Rule 1.16(d) (Declining or Terminat-

---

**1.** Rule 16–751(a) provides in relevant part:
    (a) **Commencement of disciplinary or remedial action.**
    (1) Upon approval of the Commission. Upon approval or direction of the [Attorney Grievance] Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

**2.** Rule 1.3 provides:
    A lawyer shall act with reasonable diligence and promptness in representing a client.

**3.** Rule 1.4 states in pertinent part:
    (a) A lawyer shall: (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules; (2) keep the client reasonably informed about the status of the matter; (3) promptly comply with reasonable requests for information; and (4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.
    (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

**4.** Rule 1.15 states:

ing Representation),[5] Rule 8.1(b) (Bar Admission and Disciplinary Matters),[6] and Rules 8.4(a) and (d) (Misconduct).[7] The

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

\* \* \*

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

5. Rule 1.16 provides in relevant part:

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

6. Rule 8.1 states in pertinent part:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

\* \* \*

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

7. Rule 8.4 states in relevant part:

factual bases of the charges involved Lara's receipt of advance fee payments of $500.00 and $600.00 from Richard A. Frye, Jr., and Nikki L. Johnson, respectively, which Lara deposited in a personal account, rather than an attorney trust account, having not earned the fees and abandoned both clients after performing no legal services. This Court referred the matter to Judge David A. Boynton of the Circuit Court for Montgomery County for hearing, pursuant to Maryland Rule 16–757.[8]

---

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\* \* \*

(d) engage in conduct that is prejudicial to the administration of justice;

8. Rule 16–757 provides:

(a) **Generally.** The hearing of a disciplinary or remedial action is governed by the rules of evidence and procedure applicable to a court trial in a civil action tried in a circuit court. Unless extended by the Court of Appeals, the hearing shall be completed within 120 days after service on the respondent of the order designating a judge. Before the conclusion of the hearing, the judge may permit any complainant to testify, subject to cross-examination, regarding the effect of the alleged misconduct. A respondent attorney may offer, or the judge may inquire regarding, evidence otherwise admissible of any remedial action undertaken relevant to the allegations. Bar Counsel may respond to any evidence of remedial action.

(b) **Burdens of proof.** The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence.

(c) **Findings and conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party.

(d) **Transcript.** The petitioner shall cause a transcript of the hearing to be prepared and included in the record.

(e) **Transmittal of record.** Unless a different time is ordered by the Court of Appeals, the clerk shall transmit the record to the Court of

On April 19, 2010, Lara was personally served with process issued by the Circuit Court for Montgomery County, to which was appended the "Petition for Disciplinary or Remedial Action" filed by Bar Counsel. Lara failed to file an answer, timely or otherwise. Thereafter, Bar Counsel requested entry of an order of default against Lara, and an Order of Default was entered. Although notice of the default order was mailed to Lara at his last known address, he never moved to vacate the default order.

Judge Boynton held a hearing on the Petition on August 6, 2010. Lara neither attended nor participated, although he had received notice. At the hearing, Bar Counsel presented evidence consisting of several documentary exhibits as well as testimony by William Ramsey, an investigator employed by the Attorney Grievance Commission. Thereafter, Judge Boynton issued Findings of Fact and Conclusions of Law in which he found, by clear and convincing evidence, that Lara's conduct constituted violations of Rules 1.3, 1.4(a) and (b), 1.15(a), (c), and (d), 1.16(d), 8.1(b), and 8.4(a) and (d).

**Findings of Fact**

Judge Boynton made the following findings regarding Lara's background, as well as Lara's representation of Mr. Frye and Ms. Johnson:

> Lara was admitted to the Maryland Bar on December 13, 1995. Pursuant to an order of the Court of Appeals dated April 6, 2009, the Court prohibited Lara from the further practice of law in the State of Maryland for being in default in his payment of the annual assessment issued by the Client Protection Fund of the Maryland Bar.

> Lara most recently maintained a law office at 20251 Century Boulevard, Suite 140, in Germantown, Maryland. He vacated that law office sometime during the summer of 2008. A few months before doing so, Lara had agreed to undertake separate representation of clients Richard A.

---

Appeals within 15 days after the statement of findings and conclusions is filed.

Frye, Jr. ("Frye") and Nikki L. Johnson ("Johnson"). Each of those clients contacted Lara in the Spring of 2008 and made fee payments to him to handle Chapter 7 bankruptcy filings. Both Frye and Johnson complained to the Commission after Lara abandoned his representation of them without providing any legal service or issuing a fee refund.

Frye paid Lara the sum of $500.00 on April 21, 2008. Frye understood such payment to be a partial fee payment. Lara did not deposit Frye's $500.00 fee payment into a trust account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. He did not obtain Frye's informed consent, confirmed in writing, to deposit his advance fee payment into a bank account other than a client trust account.

When Frye next tried to contact Lara some time after their initial meeting on April 21, 2008, he discovered Lara had moved out of his office in Germantown and that Lara's office phone number was disconnected. Lara never contacted Frye to provide a new phone number or address. Lara did not file the bankruptcy case for which he had been engaged by Frye, yet he retained Frye's entire $500.00 fee payment.

The circumstances leading to Johnson's complaint are similar. Johnson met with Lara on May 6, 2008 and paid him $600.00 on May 16, 2008 as a deposit toward what was quoted to her as a total fee of $1,000 to handle her bankruptcy filing. As with the Frye payment, Lara did not deposit Johnson's $600.00 fee payment into a trust account. Again, he did not obtain the client's informed consent, confirmed in writing, to deposit Johnson's advance fee payment into a non-trust account.

Starting in July 2008, Johnson was no longer able to reach Lara on his law office phone number, which had been disconnected. She soon learned that he had vacated his office in Germantown. Lara never provided Johnson with new contact information, and he failed to file her bankruptcy case. As in the Frye matter, Lara kept Johnson's entire $600.00 fee payment even though he had not performed the legal service for which such payment was made.

Judge Boynton noted that Bar Counsel repeatedly had attempted to contact Lara, and that William Ramsey, an investigator for the Attorney Grievance Commission, finally interviewed him after arriving unannounced at his home:

Johnson and Frye each complained to the Attorney Grievance Commission within a few weeks of one another in June 2009. The office of Bar Counsel requested a written response from Lara as to each complaint by mailing correspondence to Lara's home address, located in Germantown. Lara failed to respond to Bar Counsel's letters seeking a written response in each matter.

Thereafter, William Ramsey ("Ramsey"), an investigator for the Commission, was assigned to contact Lara. After Lara failed to respond to Ramsey's phone messages, Ramsey made an unannounced visit to Lara's home on August 18, 2009. Lara agreed to speak to Ramsey. Lara acknowledged his prior receipt of the Johnson and Frye complaints with Bar Counsel's correspondence requesting a response. He offered no explanation for failing to respond.

Lara acknowledged to Ramsey that both the Frye and Johnson fee payments had been deposited in a personal bank account. He stated he no longer had an active trust account at the time he received both clients' payments.

At the time he spoke to Ramsey in August 2009, Lara expressed a willingness to refund the fee payments made by Frye and Johnson. At the August 6, 2010 hearing, this court received evidence in the form of recent affidavits executed by Frye and Johnson confirming that neither of them has received any refund from Lara.

Before concluding his interview of Lara on August 18, 2009, Ramsey reminded Lara of his obligation to provide Bar Counsel with written responses to the Frye and Johnson complaints. Despite that reminder, Lara did not submit any response to either complaint.

## Conclusions of Law

Based upon these findings, Judge Boynton determined that Lara violated Rules 1.3 and 1.4(a) and (b) by failing to carry

out the representation for which he was engaged by Mr. Frye and Ms. Johnson and also by failing to keep the clients reasonably informed:

> This court finds that there was clear and convincing evidence presented to establish the averments of the Commission's Petition for Disciplinary or Remedial Action against Lara and that such evidence supports each violation of the Maryland Lawyers' Rules of Professional Conduct charged in the petition.

> After receiving at least a partial fee payment from each client to commence representation, Lara failed to carry out the legal representation for which he was engaged by clients Frye and Johnson with reasonable diligence and promptness. He therefore violated Rule 1.3.

> Lara failed to keep Frye and Johnson reasonably informed about the status of their matters and failed to communicate to them fundamentally important information concerning the status of his law practice. Because Lara did not notify them when he closed his law office, Frye and Johnson were unable to contact Lara for the purpose of seeking information about their cases. Such conduct is sufficient to establish Lara's violation of Rule 1.4, governing communication with clients.

The hearing judge also concluded that Lara violated Rules 1.15(a), (c), and (d), as well as Rule 1.16(d) by depositing the unearned fees in a personal account, rather than in a trust account, and thereafter abandoning the representation of Mr. Frye and Ms. Johnson and failing to refund the advance payments:

> Lara failed to deposit the advance fee payments he received from Frye and Johnson in a trust account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. He did not have either client's informed consent, confirmed in writing, to an arrangement allowing him to deposit such fees into a different type of account. Neither fee payment had been earned at the time Lara received it, and, in fact, Lara did not render any service to either client to earn the

fees subsequently. Because the advance payments from Frye and Johnson were not earned, they remained client funds to be held in trust. *Attorney Grievance Commission v. Ugwuonye*, 405 Md. 351, 370–71 [952 A.2d 226] (2008); *Attorney Grievance Commission v. Lawson*, 401 Md. 536, 578–79 [933 A.2d 842] (2007). Lara's failure to deposit and maintain the unearned advance fee payments of Frye and Johnson in a trust account violated Rule 1.15(a) and (c).

When Lara vacated his law office and abandoned his representation of Frye and Johnson, there was a de facto termination of each representation. Lara failed to communicate such termination to either client, and he did not protect the clients' interests by giving them reasonable notice or allowing time for employment of other counsel. Such conduct violated Rule 1.16(d). Lara further violated Rule 1.16(d), as well as Rule 1.15(d), by failing to refund advance payments of fees that had not been earned to Frye and Johnson.

Finally, Judge Boynton determined that Lara exhibited a lack of professionalism in failing to respond to his clients or Bar Counsel and in so doing, violated Rule 8.1(b), as well as Rules 8.4(a) and (d):

> Lara's abandonment of two clients without any form of notification constituted conduct prejudicial to the administration of justice, in violation of Rule 8.4(d). *See Attorney Grievance Commission v. Tinsky*, 377 Md. 646, 651–52 [835 A.2d 542] (2003). By failing to respond to Bar Counsel's lawful demands for information concerning the complaints filed by Frye and Johnson, Lara violated Rule 8.1(b). *Attorney Grievance Commission v. Jarosinski*, 411 Md. 432, 446 [983 A.2d 477] (2009). Lara's multiple violations of the Rules of Professional Conduct as determined herein also establish misconduct in violation of Rule 8.4(a), which makes it professional misconduct for a lawyer to "violate or attempt to violate" the Rules of Professional Conduct. *Attorney Grievance Commission v. Foltz*, 411 Md. 359, 411 [983 A.2d 434] (2009).

In summary, this court concludes that Lara violated Rules 1.3, 1.4, 1.15, 1.16(d), 8.1(b), and 8.4(a) and (d) of the Maryland Lawyers' Rules of Professional Conduct.

## Standard of Review

"This Court has original and complete jurisdiction over attorney discipline proceedings in Maryland." *Attorney Grievance v. Nwadike,* 416 Md. 180, 192, 6 A.3d 287, 294 (2010), quoting *Attorney Grievance v. Thomas,* 409 Md. 121, 147, 973 A.2d 185, 200 (2009). In our independent review of the record, we accept the hearing judge's findings of fact as prima facie correct unless shown to be clearly erroneous. *Attorney Grievance v. Palmer,* 417 Md. 185, 205, 9 A.3d 37, 49 (2010). If no exceptions are filed, we may treat the hearing judge's findings of fact as established for the purpose of determining the appropriate sanction. Rule 16–759(b)(2)(A).[9] We review the hearing judge's conclusions of law de novo. Rule 16–579(b)(1);[10] *Attorney Grievance v. Jarosinski,* 411 Md. 432, 448–49, 983 A.2d 477, 487 (2009).

## Discussion

Bar Counsel has not filed any exceptions to the hearing judge's findings of fact or conclusions of law. Lara also did not file any exceptions and did not appear at oral argument before this Court. As a result, we accept Judge Boynton's findings of fact as established for the purpose of determining the proper sanction. Rule 16–759(b)(2)(A). Based upon our de novo review of the record, we also agree with the hearing judge that Lara violated Rules 1.3, 1.4(a) and (b), 1.15(a), (c), and (d), 1.16(d), 8.1(b), and 8.4(a) and (d).

---

**9.** Rule 16–759(b)(2)(A) states:

(2) Findings of Fact. (A) If no exceptions are filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.

**10.** Rule 16–759(b)(1) provides:

(b) **Review by Court of Appeals.** (1) Conclusions of law. The Court of Appeals shall review de novo the circuit court judge's conclusions of law.

Bar Counsel recommends disbarment in the present case, because of Lara's "multiple infractions and the indifference he has shown his clients and this Court by his lack of responsiveness."

■ In the present case, in connection with two separate client matters, Lara agreed to undertake their representation, obtained advance fee payments which he deposited in a personal account rather than in trust, abandoned his law practice without communicating with his clients and without performing any legal work on their behalf, and failed to refund the unearned legal fees, all in violation of Rules 1.3, 1.4(a) and (b), 1.15(a), (c), and (d), 1.16(d), and 8.4(a) and (d). His egregious behavior is exacerbated by his complete failure to respond to Bar Counsel's investigation, although reminded of his obligation by Mr. Ramsey, the investigator, in violation of Rule 8.1(b).

In cases involving flagrant neglect of client affairs, including failure to communicate with clients or respond to inquiries from Bar Counsel, we have imposed disbarment as the appropriate sanction. In *Attorney Grievance v. Tinsky,* 377 Md. 646, 835 A.2d 542 (2003), a client had paid Tinsky $925.00 to file a Chapter 7 bankruptcy petition. Tinsky failed to file the petition until three years had passed and failed to attach the required schedules and statement of financial affairs. Thereafter, the Bankruptcy Court dismissed the petition, but Tinsky never refunded the client's fee, "although the services rendered to [the client] were of no value to him." *Id.* at 650, 835 A.2d at 544. Tinsky, moreover, failed to respond to Bar Counsel's Petition for Disciplinary or Remedial Action, such that an order of default was entered against him, as well as failed to attend the evidentiary hearing in the Circuit Court, and also did not appear for oral argument before this Court. We concluded that disbarment was necessary for the protection of the public because of Tinsky's "lack of diligence, his lack of preparation, his failure to communicate with his clients, his charging of unreasonable fees, his failure to account for and return monies, his misrepresentations, and his failure to

comply with Bar Counsel's requests." *Id.* at 655, 835 A.2d at 547, quoting *Attorney Grievance v. Wallace,* 368 Md. 277, 293, 793 A.2d 535, 545 (2002). We emphasized that disbarment was appropriate particularly because Tinsky's conduct had tarnished the legal profession, in violation of Rule 8.4(d): "Tinsky betrayed the trust that his clients placed in him when they sought his assistance and the public trust with which he was endowed when he was admitted to the Bar of this Court." *Id.* at 655–56, 835 A.2d at 547.

Similarly, in *Attorney Grievance v. Logan,* 390 Md. 313, 888 A.2d 359 (2005), we imposed disbarment when an attorney abandoned his client and refused to participate in the disciplinary process. In that case, after a series of contentious e-mail exchanges, Logan advised his client that "he was terminating their attorney-client relationship," declined any further communication, and failed to return original documents to the client, in violation of Rules 1.3, 1.4(a), and 8.4(a) and (d). *Id.* at 318, 888 A.2d at 362. In addition, Logan failed to respond to letters from Bar Counsel, did not answer the Petition for Disciplinary or Remedial Action, and did not appear at the hearing in the Circuit Court. He also did not file any pleadings or appear at oral argument before this Court. As a result, we agreed with Bar Counsel that disbarment was warranted:

> For reasons unknown, the Respondent has chosen to ignore this Court's disciplinary authority over him, initially by not answering Bar Counsel's attempts to obtain a response to the [client's] complaint and thereafter by failing to file an answer in this proceeding. The Respondent has not otherwise attempted to present any explanatory information in response to the charges. Having offered no justification for a less severe sanction, the Respondent should be disbarred.

*Id.* at 320, 888 A.2d at 363. *See also Attorney Grievance v. Faber,* 373 Md. 173, 817 A.2d 205 (2003) (imposing disbarment when attorney violated Rules 1.1, 1.3, 1.4(a) and (b), and 1.16(d) by undertaking representation of client in connection with filing bankruptcy, obtaining $650.00 in advance fee pay-

ment, and thereafter failing to file the bankruptcy petition or keep client reasonably informed).

Here, Lara agreed to represent Mr. Frye and Ms. Johnson in filing their individual bankruptcy petitions, deposited their advance fee payments in a personal account shortly before abandoning his law office, as well as all client communication, and failed to refund the fees despite performing no legal work. Moreover, Lara ignored all requests for information by Bar Counsel, although reminded of his obligation by Mr. Ramsey, who was only able to interview Lara after arriving unannounced at his home. This conduct warrants the gravest sanction, disbarment, for the protection of the public.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JOEL DESINGCO LARA.**