40 A.3d 1039

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Adrian Van NELSON, II.**

**Misc. Docket AG No. 9, Sept. Term, 2011.**

Court of Appeals of Maryland.

March 27, 2012.

346

JaCina N. Stanton, Assistant Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for Petitioner.

Adrian Van Nelson, II, Rockville, MD, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA, and McDONALD, JJ.

BATTAGLIA, J.

Adrian Van Nelson, II, Respondent, was admitted to the Maryland Bar on December 16, 1992. On April 14, 2011, the Attorney Grievance Commission ("Petitioner" or "Bar Counsel"), acting pursuant to Maryland Rule 16–751(a),[1] filed a "Petition for Disciplinary or Remedial Action" against Nelson stemming from a complaint filed by Ms. Latania Maise. Petitioner alleged that Respondent violated the following Rules of Professional Conduct: 1.1 (Competence),[2] 1.4(a)(1)-(3) and (b) (Communication),[3] 1.5(a) (Fees),[4] 1.15(a), (b), and (d) (Safe-

---

1. Rule 16–751(a) provides, in relevant part:

 (a) **Commencement of disciplinary or remedial action.** (1) Upon approval or direction of Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals

2. Rule 1.1 provides:

 A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

3. Rule 1.4 provides, in pertinent part:

 (a) A lawyer shall:
 (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
 (2) keep the client reasonably informed about the status of the matter;
 (3) promptly comply with reasonable requests for information; and

 ∗　　　∗　　　∗

 (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

4. Rule 1.5 provides, in pertinent part:

 (a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

keeping Property),[5] 1.16(d) (Declining or Terminating Representation),[6] 8.1(b) (Bar Admission and Disciplinary Matters),[7]

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

5. Rule 1.15 states, in pertinent part:
 (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.
 (b) A lawyer may deposit the lawyer's own funds in a client trust account only as permitted by Rule 16–607 b.

 * * *

 (d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

6. Rule 1.16 provides, in relevant part:
 (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may

and 8.4(a) and (d) (Misconduct),[8] as well as Maryland Rule 16–606.1(a),[9] related to Respondent's representation of Ms. Maise

retain papers relating to the client to the extent permitted by other law.

7. Rule 8.1 states, in pertinent part:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

\* \* \*

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

8. Rule 8.4 states, in pertinent part:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\* \* \*

(d) engage in conduct that is prejudicial to the administration of justice.

9. Rule 16–606.1 states, in pertinent part:

Rule 16–606.1. Attorney trust account record-keeping.
(a) Creation of records. The following records shall be created and maintained for the receipt and disbursement of funds of clients or of third persons:

(1) Attorney trust account identification. An identification of all attorney trust accounts maintained, including the name of the financial institution, account number, account name, date the account was opened, date the account was closed, and an agreement with the financial institution establishing each account and its interest-bearing nature.

(2) Deposits and disbursements. A record for each account that chronologically shows all deposits and disbursements, as follows:

(A) for each deposit, a record made at or near the time of the deposit that shows (i) the date of the deposit, (ii) the amount, (iii) the identity of the client or third person for whom the funds were deposited, and (iv) the purpose of the deposit;

(B) for each disbursement, including a disbursement made by electronic transfer, a record made at or near the time of disbursement that shows (i) the date of the disbursement, (ii) the amount, (iii) the payee, (iv) the identity of the client or third person for whom the disbursement was made (if not the payee), and (v) the purpose of the disbursement;

in an employment discrimination matter against the United States Department of Agriculture. In an Order dated April 19, 2011, this Court referred the matter to Judge Robert A. Greenberg of the Circuit Court for Montgomery County for hearing, pursuant to Rule 16–757.[10]

Respondent was personally served with the Petition for Disciplinary or Remedial Action, as well as our Order, the Writ of Summons, Interrogatories, a Request for Production of Documents, and a Request for Admission of Facts and Genuineness of Documents, but did not file a response to the

---

(C) for each disbursement made by electronic transfer, a written memorandum authorizing the transaction and identifying the attorney responsible for the transaction.

10. Rule 16–757 provides:
(a) **Generally.** The hearing of a disciplinary or remedial action is governed by the rules of evidence and procedure applicable to a court trial in a civil action tried in a circuit court. Unless extended by the Court of Appeals, the hearing shall be completed within 120 days after service on the respondent of the order designating a judge. Before the conclusion of the hearing, the judge may permit any complainant to testify, subject to cross-examination, regarding the effect of the alleged misconduct. A respondent attorney may offer, or the judge may inquire regarding, evidence otherwise admissible of any remedial action undertaken relevant to the allegations. Bar Counsel may respond to any evidence of remedial action.
(b) **Burdens of proof.** The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence.
(c) **Findings and conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party.
(d) **Transcript.** The petitioner shall cause a transcript of the hearing to be prepared and included in the record.
(e) **Transmittal of record.** Unless a different time is ordered by the Court of Appeals, the clerk shall transmit the record to the Court of Appeals within 15 days after the statement of findings and conclusions is filed.

Petition, to the discovery requests, or to the Requests for Admission. Subsequently, Bar Counsel filed a Request for Order of Default, which was granted; Respondent did not file a motion to vacate the Default Order. A hearing, which Respondent did not attend, was held on September 16, 2011, after which Judge Greenberg issued Findings of Fact and Conclusions of Law in which he found that Nelson did not violate Rule 1.1,[11] but that, by clear and convincing evidence, Nelson did violate Rules 1.4(a)(2), 1.4(a)(3), 1.5(a), 1.15(c), 1.15(d), 1.16(d), 8.1(b), 8.4(a), and 8.4(d), as well as Maryland Rules 16–604 [12] and 16–606.1(a)(3):

### FINDINGS OF FACT

The court finds the following facts to have been established by testimony and documentary evidence, including Petitioner's "Request for Admission of Facts and Genuineness of Documents," to which no response was filed.

Respondent was admitted to practice law in Maryland on December 16, 1992. Most recently he had an office at 600 East Jefferson Street, Suite 316, Rockville, Maryland 20852, but has apparently discontinued his practice.

Ms. Maise is a resident of Bowie who is employed by the United States Department of Agriculture (USDA). She met with Respondent regarding a discrimination charge she wished to pursue against her employer, resulting from an unsatisfactory work appraisal she had received for the years 2006–07. She paid $250.00 to Respondent on May 5, 2008, apparently for her initial consultation. A Retainer Agreement, dated August 7, 2008, outlined the terms of Respondent's representation, by which Maise was to pay a retainer

---

**11.** Bar Counsel did not file an exception to Judge Greenberg's failure to find a violation of Rule 1.1, so we shall not address the issue.

**12.** The Findings of Fact and Conclusions of Law contain a typographical error in which Rule 16–604 is referred to as Rule 16–404, which governs court reporters; it clearly is not applicable in this matter. Maryland Rule 16–604, although not specifically charged by Bar Counsel, is incorporated by reference in Rule 1.15.

fee of $1,500.00, against an hourly rate of $250.00. The retainer fee was paid by check on the same day. Maise paid an additional $2,500.00 to Respondent on or about February 9, 2009.

As the matter had not progressed to the hearing stage, Respondent prepared another Retainer Agreement, "to advise and represent [Maise] in an administrative EEO hearing [against USDA]." A new "non-refundable" retainer of $2,500.00 was requested, which was apparently the fee evidenced by Exhibit 5. Further, a $500.00 payment, representing costs for a deposition transcript, was deposited with Respondent on March 19. The $500.00 was not used to pay any costs, however, because the transcript was never ordered.

No hearing took place because, ultimately, Maise settled her claim against USDA, pursuant to the terms of an agreement she signed on July 29, 2009. Additional fees of $5,075.00 were generated prior to the settlement, however, which were described in an invoice covering the period from April 1 to July 13. By check dated July 17, 2009, Maise paid Respondent in that amount.

Under the terms of the settlement agreement, among other considerations, USDA was to pay $10,000.00 to Maise, representing her attorneys' fees and costs. The check representing that amount, however, was made payable only to Respondent, pursuant to the terms of the settlement negotiated by him. Respondent also knew that he had defaulted on student loans owed to the United States Department of Education ("USDE"). Based upon Maise's previous payments, a total of $9,825.00 in fees was owed by Respondent to Maise.

Thereafter, despite repeated requests, Respondent did not respond to Maise's inquiries regarding disposition of the settlement funds. She subsequently learned directly from USDA's attorney that the $10,000.00 payment had been applied to an outstanding student loan debt owed by Respondent to USDE.

Eventually, Maise was contacted by Respondent. By email dated October 23, 2009, he promised to try and recover the money, and claimed that he thought the settlement check would be payable to him and Maise. Since February, 2010, when she received an email in response to further inquiries, Maise has heard nothing from Respondent, and the money owed to her has not been paid. Eventually, she filed suit against Respondent in the District Court for Prince George's County, and recovered a judgment against him which has not been satisfied.

After Maise filed her complaint with the Petitioner on May 11, 2010, an investigation was commenced. Letters of inquiry from Petitioner to Respondent, dated June 21 and July 6, 2010, have been ignored. Respondent refused to meet with Edwin Karr, Bar Counsel Investigator, canceling an interview scheduled for August 19, 2010. Respondent has not participated in this judicial proceeding, and his current whereabouts are unknown to the court. As such, the court heard no evidence of any relevant remedial action taken by Respondent, nor any mitigation, and the court finds none.

Such other facts as may be necessary to the court's decision are set forth, below.

### CONCLUSIONS OF LAW

### A. Maryland Lawyers' Rule of Professional Conduct 1.1 (Competence)

Rule 1.1 requires that an attorney exhibit "the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Petitioner contends that it was incumbent upon Respondent to ensure that Maise receive the proceeds settlement check, representing attorneys' fees she expended. Instead, knowing that he owed money to another agency of the federal government, Respondent failed to ensure that Maise be named as at least one of the payees on the settlement check. As a result of his negligent act, Maise never received a dime, because the

settlement proceeds were seized by the government to satisfy Respondent's pre-existing obligation to USDE.

While the court believes it is standard practice in most cases for settlement checks to be made payable to attorney and client, it knows of no requirement that this be done. There was no testimony at trial as to the negotiations between Respondent and the UDSA that ultimately resulted in the issuance of a check made payable solely to Respondent.

The court is not prepared to hold that Respondent should have known that one agency of the federal government would effectively seize a check issued by another agency, without notice, to satisfy a purported debt. There was no evidence to suggest that Respondent intended to appropriate the $10,000.00 for his own use, had he received a check payable to him in that amount. A single mistake may constitute negligence, but is not necessarily misconduct under this rule. *See Attorney Grievance Commission v. Thompson*, 376 Md. 500, 512 [830 A.2d 474] (2003).

In short, the court cannot find, by clear and convincing evidence, that Respondent's failure to insist that the settlement check be made payable to Maise, only, or with him jointly, was incompetent within the meaning of the rule.

**B. Maryland Lawyer' Rule of Professional Conduct 1.4 (Communication)**

Paragraphs (a)(2) and (3) of this rule, respectively, require a lawyer to keep his client "reasonably informed" about the status of the case, and to promptly respond to reasonable requests for information from the client.

Respondent failed to return Maise's persistent telephone calls and email requests throughout late 2009 until February 2010. Maise learned that the $10,000.00 payment had been seized by the federal government from USDA counsel, and not from Respondent, only by virtue of her own efforts to secure information. Respondent did not keep Maise reasonably informed, and certainly was not prompt in responding to her requests regarding the status of her settle-

ment check. The court finds by clear and convincing evidence that Respondent violated Rule 1.4(a)(2) and (3).

## C. Maryland Rule of Professional Conduct 1.5 (Fees)

Subsection (a) of this rule prohibits, among other things, the collection of "an unreasonable fee." Respondent received the benefit of $10,000.00 in attorneys' fees when the USDE effectively appropriated the settlement check and credited it to his delinquent student loan account. He therefore received $19,875.00 in attorneys' fees, none of which was refunded to Maise.

Since it was never contemplated by the parties that Respondent would receive more than twice the agreed-upon fee, the court finds by clear and convincing evidence that Respondent violated Rule 1.5(a).

## D. Maryland Rule of Professional Conduct 1.15 (Safekeeping Property)

Rule 1.15(a) requires an attorney to hold property of clients separately from the lawyer's own property. If money, the attorney must hold such property in a separate account, and complete records pertaining to the account must be kept and preserved for at least five years. This professional conduct rule is implemented by Maryland Rule 16–604, regarding trust account requirements, and 16–606.1(a)(3), which addresses attorney trust account record-keeping.

In general, Rule 1.15(c) permits a lawyer to withdraw legal fees and expenses from the account only when earned.

In this case, Maise paid Respondent $500.00, by check dated March 19, 2009, for the transcript of a deposition. The deposition transcript was never ordered, purportedly because of the impending settlement of the case, but Respondent did not deposit the check in a trust account, as required by law, and never refunded the amount to his client.

Respondent also failed to deposit unearned attorneys' fees in a trust account, including payments of $1,500.00 (August 7, 2008) and $2,500 (February 9, 2009). On or about Febru-

ary 18, 2009, Maise paid another $2,500.00, which represented a "non-refundable fee." Arguably, the $250.00 check (May 5, 2008) had been earned at the time it was paid by Maise.

The court finds by clear and convincing evidence that the failure to deposit Maise's retainer checks in a separate trust account is a violation of Rules 1.15(c) and 16–604. Since the checks were not deposited in a separate trust account, it follows that there was a violation of Rule 16–606.1(a)(3), requiring the attorney to keep a record of each attorney trust transaction.

Rule 1.15(d) requires a lawyer to deliver promptly to his client any funds belonging to that person, and render a prompt accounting. Here, because an agency of the federal government appropriated the settlement proceeds to benefit the Respondent, and Maise received none of her settlement, the court finds by clear and convincing evidence that Respondent has violated the rule.

### E. Maryland Rule of Professional Conduct 1.16(d) (Declining or Terminating Representation)

This rule requires a lawyer to take reasonable steps, upon terminating representation, to protect his client's interests, including surrendering property belonging to the client. This includes the refund of any payment made by the client to which she is entitled.

Here, Respondent, after many months of ignoring Maise's requests, failed to transmit to her the proceeds of that portion of the settlement check to which she was entitled, and the $500.00 advanced as costs. The court agrees with Petitioner that Respondent's apparent refusal to communicate was a *de facto* termination of representation. It was therefore incumbent upon Respondent, after his effective withdrawal from the case, to turn over to Maise the attorneys' fees and costs she had advanced. That this was not done constitutes clear and convincing evidence of the violation of this rule.

### F. Maryland Rule of Professional Conduct 8.1 (Bar Admission and Disciplinary Matters)

Subsection (b) of this rule prohibits a lawyer from knowingly failing to respond to a lawful demand for information from a disciplinary authority. Respondent in this case failed to respond to Bar Counsel's requests for information by ignoring two letters, and refusing to be interviewed by an investigator for the Attorney Grievance Commission. By clear and convincing evidence, this court finds a violation of this rule.

### G. Maryland Rule of Professional Conduct 8.4 (Misconduct)

Rule 8.4(a) makes it professional misconduct to violate or attempt to violate the Rules of Professional Conduct, and subsection (d) prohibits engaging in conduct that is prejudicial to the administration of justice.

The court agrees with Petitioner, and finds by clear and convincing evidence, that the above-cited violations of the Rules of Professional Conduct constitute misconduct under subsection (a).

Furthermore, Respondent's disregard for his client, refusal to pay her the fees and expenses she had advanced, and refusal to cooperate in the investigation of this matter constitute a violation of subsection (d), by clear and convincing evidence. Failure to respond to Bar Counsel's demand for information is, by itself, a violation of this rule. *Attorney Grievance Commission v. Oswinkle* 364 Md. 182 [772 A.2d 267] (2001).

(alterations in original) (internal citations to evidentiary exhibits omitted).

Bar Counsel has not filed any exceptions to Judge Greenberg's Findings of Fact and Conclusions of Law and recommends disbarment. Nelson also has not filed any exceptions, but he did appear at oral argument before this Court on February 3, 2012 to argue for a lesser sanction. On February 6, 2012, however, we entered a per curiam order disbarring Respondent, which stated:

For reasons to be stated in an opinion later to be filed, it is this 6th day of February, 2012,

ORDERED, by the Court of Appeals of Maryland, that the respondent, Adrian Van Nelson, II, be, and he is hereby, disbarred, effective immediately, from the practice of law in the State of Maryland; and it is further

ORDERED that the Clerk of this Court shall strike the name of Adrian Van Nelson, II from the register of attorneys, and pursuant to Maryland Rule 16–760(e), shall certify that fact to the Trustees of the Client Protection Fund and the clerks of all judicial tribunals in the State; and it is further

ORDERED that respondent shall pay all costs as taxed by the Clerk of this Court, including the costs of all transcripts, pursuant to Maryland Rule 16–761(b), for which sum judgment is entered in favor of the Attorney Grievance Commission of Maryland against Adrian Van Nelson, II.

Accordingly, we shall now explain our reasons.

 "This Court has original and complete jurisdiction over attorney discipline proceedings in Maryland." *Attorney Grievance v. Stern,* 419 Md. 525, 556, 19 A.3d 904, 925 (2011), quoting *Attorney Grievance v. Nwadike,* 416 Md. 180, 192, 6 A.3d 287, 294 (2010). "[W]e accept the hearing judge's findings of fact as prima facie correct unless shown to be clearly erroneous." *Id.* at 556, 19 A.3d at 925, citing *Attorney Grievance v. Palmer,* 417 Md. 185, 205, 9 A.3d 37, 49 (2010). Under Maryland Rule 16–759(b)(2)(A), this Court may treat the trial judge's findings of fact as established by clear and convincing evidence, if no exceptions are filed.[13] We review the Circuit Court judge's conclusions of law *de novo,* pursuant to Maryland Rule 16–759(b)(1).[14]

---

**13.** Rule 16–759(b)(2)(A) states:
(2) Findings of fact. (A) If no exceptions are filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.

**14.** Rule 16–759(b)(1) states:

Because no exceptions were filed, we accept Judge Greenberg's findings of fact as proven by clear and convincing evidence. With respect to the various legal conclusions, we agree that the facts prove Respondent violated Maryland Rules of Professional Conduct 1.4(a)(2) and (a)(3), 1.5(a), 1.15(c) and (d), 1.16(d), 8.1(b), 8.4(a) and (d), as well as Maryland Rules 16–604 and 16–606.1(a)(3).

We have previously held that "the failure to keep a client reasonably informed about the progress of his representation is a violation of [Rule] 1.4." *Attorney Grievance v. Lawson,* 401 Md. 536, 578, 933 A.2d 842, 867 (2007). In *Lawson,* we held that an attorney's failure to respond to his client's request for information about a hearing on a Motion to Dismiss and to inform his client regarding the outcome of the hearing, was a violation of Rule 1.4. *Id.* at 577, 933 A.2d at 866 ("[The client] was still entitled to a timely response to his specific question.").

■ In this case, Respondent failed to communicate with Ms. Maise regarding the disposition of the $10,000 check from the time of settlement, July 2009, until October of 2009, despite numerous phone calls from Ms. Maise requesting this information; Ms. Maise eventually had to contact the attorney for the Department of Agriculture to learn the fate of the $10,000 settlement check. Respondent then failed to respond to Ms. Maise's repeated attempts to reach him in the latter part of 2009 about that which he intended to do regarding her loss of the $10,000. We agree with Judge Greenberg that Nelson's conduct violates Rules 1.4(a)(2) and (3), which require an attorney to "promptly comply with reasonable requests for information."

■ As to Rule 1.5(a), which prohibits the collection of an unreasonable fee, we have stated that, " '[i]n almost every case there will be a self-defined upper limit on a permissible fee charge—the amount to which the lawyer and client have

(b) **Review by Court of Appeals.** (1) Conclusions of law. The Court of Appeals shall review de novo the circuit judge's conclusions of law.

agreed. Any charge by a lawyer in excess of that figure is plainly impermissible and thus excessive or unreasonable....'" *Attorney Grievance Comm'n v. Korotki*, 318 Md. 646, 665, 569 A.2d 1224, 1234 (1990), quoting Charles W. Wolfram, *Modern Legal Ethics* § 9.3 (1986). The fee negotiated as set forth in the retainer agreements in this case was $250 per hour; Judge Greenberg found that the Respondent had earned $9,825 under this fee arrangement, but that Respondent also, by virtue of the Government applying the $10,000 settlement check to his outstanding student loans, obtained the benefit of $10,000 in additional fees. As a result, Respondent received a total of $19,825 in fees, none of which was refunded to Ms. Maise. As Judge Greenberg stated, almost $20,000 in fees was never contemplated by the parties and is plainly unreasonable under the principle we enunciated in *Korotki*. Thus, Respondent violated Rule 1.5(a).

■ Rules 1.15(c) requires a lawyer to deposit all legal fees and expenses into a trust account until earned. Judge Greenberg found that the Respondent failed to deposit four separate checks into escrow as required by this Rule, including: a $1,500 retainer check on August 7, 2008, a $2,500 retainer check on February 9, 2009, a $2,500 retainer check on February 18, 2009, and a $500 check representing the cost of a deposition transcript on March 19, 2009.[15] Each of these instances is a violation of Rule 1.15(c).

We also agree that Respondent's failure to deposit Ms. Maise's checks into a trust account and make a recording of such a deposit constitute violations of Maryland Rules 16–604 and 16–606.1(a)(3), relating to the creation and maintenance of trust accounts. Rule 16–604 explicitly requires attorneys to keep all client funds in a trust account. Respondent violated this rule when he did not place the retainer checks and the transcript fee into a trust account upon receipt. *See Lawson*, 401 Md. at 580–81, 933 A.2d at 868–869 (holding that an

---

15. Judge Greenberg found that the check for an initial consultation may not have been placed in a trust account, but "[a]rguably, the $250 check (May 5, 2008) had been earned at the time it was paid by Maise."

attorney who did not place an unearned fee of $5,000 into a trust account violated Rule 16–604). We have stated that under Rule 16–606.1(a), an attorney must keep ledgers showing all deposits and disbursements from his or her trust account. *Attorney Grievance v. Patterson*, 421 Md. 708, 728, 28 A.3d 1196, 1207–08 (2011). In this case, Judge Greenberg found that Respondent did not maintain a record of the deposits of the retainer fees that he did not deposit into a trust account. His failure to maintain these records is a violation of Rule 16–606.1(a)(3).

■ As to Rule 1.15(d), Judge Greenberg found that Respondent never returned any of the $10,000 settlement he negotiated to Ms. Maise, despite the fact that she was entitled, because the settlement agreement provided attorneys' fees, to have returned to her the amount she had previously paid to Respondent under the retainer agreement ($9,825). We agree with the Judge that the failure to remit to Ms. Maise the portion of the settlement to which she was entitled is a violation of Rule 1.15(d). *See Stern*, 419 Md. at 557, 19 A.3d at 925 ("[W]e agree that Stern violated Rule 1.15(d) and Rule 8.4(d) regarding his failure to remit payment to C.J.B. on behalf of sixteen clients, although he had received settlement proceeds on behalf of those clients[.]").

■ Rule 1.16(d) requires, *inter alia*, an attorney, upon termination of an attorney-client relationship, to return all papers and property to the client, including any monies not earned or expended. Judge Greenberg found that Respondent's failure to communicate with Ms. Maise was a de facto termination of their attorney-client relationship, thus requiring Respondent to return all unearned fees and costs. We agree that by refusing to respond to Ms. Maise's requests for information Respondent effectively terminated his representation of her. *Attorney Grievance v. Velasquez*, 380 Md. 651, 655, 846 A.2d 422, 424 (2004) (stating that an attorney's failure to respond to his client after accepting a retainer payment and not filing anything with the court constitutes abandonment of the client); *see also Attorney Grievance v. Fox*, 417 Md. 504,

11 A.3d 762 (2010). Under the circumstances, the Respondent's failure to remit to Ms. Maise the $10,000 check to which she was entitled and Respondent's failure to return the $500 check for the transcript that was never ordered are violative of Rule 1.16(d). *Attorney Grievance v. McCulloch*, 404 Md. 388, 400, 946 A.2d 1009, 1016 (2008) (finding a violation of Rule 1.16(d) when an attorney failed to refund a portion of an unearned fee after terminating representation of the client).

■ Rule 8.1(b) prohibits, *inter alia*, knowingly failing to respond to a lawful demand for information from Bar Counsel; we have consistently held that repeated failures to respond to Bar Counsel's investigative requests can be violative of Rule 8.1. *Attorney Grievance v. Bleecker*, 414 Md. 147, 174, 994 A.2d 928, 944 (2010); *Attorney Grievance v. Kreamer*, 387 Md. 503, 530–31, 876 A.2d 79, 95–96 (2005). Judge Greenberg found that Respondent never responded to any of Bar Counsel's requests during the initial investigation of Ms. Maise's complaint by "ignoring two letters and refusing to be interviewed by an investigator for the Attorney Grievance Commission." Nelson's refusal to respond to either of the letters or to the interview request is clearly violative of Rule 8.1(b).

■ Regarding Rule 8.4(d), we opined in *Attorney Grievance v. Carithers*, 421 Md. 28, 56, 25 A.3d 181, 198 (2011), that "[a]n attorney engages in conduct prejudicial to the administration of justice when he or she engages in conduct which erodes public confidence in the legal profession." Judge Greenberg found, and we agree, that Respondent's "disregard for his client, refusal to pay her the fees and expenses she had advanced, and refusal to cooperate in the investigation constitute a violation" of this Rule. Respondent charged an unreasonable fee, which is a violation of this Rule, in and of itself, *Attorney Grievance v. Braskey*, 378 Md. 425, 452, 836 A.2d 605, 621 (2003) ("The collection of an unreasonable fee is conduct prejudicial to the administration of justice."), and Respondent failed to respond to Bar Counsel's requests for information during the initial investigation as well as failed to return the $500 advanced for purchase of a transcript that was

never ordered, in violation of Rule 8.4(d). *Attorney Grievance v. Rose,* 383 Md. 385, 392, 859 A.2d 659, 663 (2004) ("This incomplete and tardy response to [Bar Counsel]'s requests for information provided the basis for the hearing court's conclusion with respect to the 8.4(d) violation"); *Carithers,* 421 Md. at 56, 25 A.3d at 198 (noting that "the intentional misappropriation of client funds is conduct which erodes the public confidence in the legal profession").

Rule 8.4(a) is violated when other Rules of Professional Conduct are breached. As heretofore explained, Respondent violated Rules 1.4(a)(2), 1.4(a)(3), 1.5(a), 1.15(c), 1.15(d), 1.16(d), 8.1(b), 8.4(d), 16–604, and 16–606.1(a)(3), related to his representation of Ms. Maise, which also violated Rule 8.4(a). *Attorney Grievance v. Webster,* 402 Md. 448, 468, 937 A.2d 161, 172 (2007) (stating that violations of other Rules of Professional Conduct constitute a violation of Rule 8.4(a)).

 When sanctioning an attorney for a violation of the Rules of Professional Conduct, we consistently have stated that the purpose of imposing sanctions is to protect the public. *Attorney Grievance v. Khandpur,* 421 Md. 1, 17, 25 A.3d 165, 175 (2011); *Bleecker,* 414 Md. at 176, 994 A.2d at 945. In determining the appropriate sanction, we often consult the American Bar Association's Standards for Imposing Lawyer Sanctions Section 9.22 concerning aggravating factors, which include:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) a pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of victim;

(i) substantial experience in the practice of law;

(j) indifference to making restitution.

American Bar Association, Standards for Imposing Lawyer Sanctions, Section 9.22 (1991). Petitioner asserts that factors (e) and (j) are applicable in this matter and recommends disbarment.

In *Bleecker*, 414 Md. 147, 994 A.2d 928, we applied aggravating factor (e) because the attorney had "knowingly fail[ed] to respond to several written demands for information, thereby thwarting Bar Counsel's efforts...." *Id.* at 177, 994 A.2d at 946. Respondent's conduct throughout the investigatory stage of these proceedings demonstrates his obstruction of disciplinary proceedings by failing to respond to Bar Counsel's investigatory requests. Judge Greenberg found that Respondent ignored letters of inquiry sent on June 21 and July 6, 2010 and refused to meet with the Bar Counsel Investigator. Given Respondent's repeated failures to respond to Bar Counsel, aggravating factor (e) is applicable. Respondent's conduct also clearly implicates factor (j) because he consistently has failed to respond to Ms. Maise about the $10,000 settlement to which she was entitled and has made no attempt at restitution.

 When Respondent appeared at oral argument, he was constrained by his failure to file any exceptions, but asserted that his lack of prior offenses should be considered as a mitigating factor and recommended a lesser sanction, such as a reprimand or suspension. Lack of prior offenses certainly is relevant. *Attorney Grievance v. Sweitzer*, 395 Md. 586, 606, 911 A.2d 440, 452 (2006) ("Here, an indefinite suspension is a more appropriate sanction to impose because Respondent has no other disciplinary record and his violations were not a pattern of misconduct."). Multiple violations of the Rules of Professional Conduct in the present case, however, clearly outweigh the mitigating effect of his lack of disciplinary history. *See Attorney Grievance v. Coppola*, 419 Md. 370, 408, 19 A.3d 431, 453 (2011) (disbarring an attorney despite the fact that "various mitigating factors were present in this case, including Coppola's lack of a prior disciplinary record").

We have previously held that cases involving improper retention of fees, failure to communicate promptly with clients, and failure to respond to Bar Counsel's lawful demands for information during an investigation warrant the imposition of disbarment. *Attorney Grievance v. Lara,* 418 Md. 355, 365, 14 A.3d 650, 657 (2011). *Lara* involved an attorney who took advance fees from his clients, deposited them into a personal account, and failed to perform any work on the clients' behalf. Lara also refused to respond to Bar Counsel's requests for information during the investigation. *Id.* at 365, 14 A.3d at 656. We held that disbarment was the appropriate sanction because he abandoned all client communication, did not refund client funds for work that was not performed, and refused to respond to Bar Counsel. *Id.* at 367, 14 A.3d at 658. In the instant matter, Respondent stopped communicating with his client, Ms. Maise, did not refund any of the $19,825, did not refund the $500 check for a transcript he never ordered, and did not respond to Bar Counsel's requests for information during the investigation of Ms. Maise's complaint. Thus, we agree with Petitioner that the appropriate sanction, in the interest of protecting the public, is disbarment.

Accordingly, we have disbarred the Respondent, Adrian Van Nelson, II.