*Attorney Grievance Commission of Maryland v. Melodie Venee Shuler*, Misc. Docket AG No. 81, September Term, 2015.  Opinion by Harrell, J.

**ATTORNEY MISCONDUCT — DISCIPLINE — DISBARMENT —** Respondent, Melodie Venee Shuler, violated Maryland Lawyers' Rules of Professional Conduct 1.1, 1.2(a), 1.3, 1.4(a) and (b), 8.1(b), and 8.4(a), (c), and (d) (the Rules as-titled at the time of the misconduct).  These violations resulted from Respondent's repeated failures to file motions on behalf of her client in the client's criminal cases, after promising to do so; repeated failures to visit with her client in jail to discuss his case after promising to do so; failure to act timely on behalf of her client; misrepresenting legal information to her client relevant to his case; failure to investigate thoroughly her client's case; and, refusal to cooperate with lawful demands for information from Bar Counsel.  Considering also a previous sanction in an attorney grievance matter, disbarment is the appropriate sanction for Respondent's misconduct.

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 81

September Term, 2015

---

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

MELODIE VENEE SHULER

---

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Hotten,
Getty,
Harrell, Glenn T., Jr.
    (Senior Judge, Specially Assigned)

JJ.

---

Opinion by Harrell, J.

---

Filed:   July 11, 2017

"Saying that something is so does not make it so necessarily."
Old Adage (Anonymous)


Petitioner, the Attorney Grievance Commission of Maryland, by its then Bar Counsel, Glenn M. Grossman, Esq., and Assistant Bar Counsel, Amy S. Paulick, Esq., filed with the Court of Appeals on 25 February 2016 public charges in this matter against Respondent, Melodie Venee Shuler. The charges stemmed from a complaint lodged by Calvin A. Keene, a former client of Respondent. Respondent was charged with violating the following Maryland Lawyers' Rules of Professional Conduct (MLRPC):[1] (1) Rule 1.1 (Competence); (2) Rule 1.2(a) (Scope of Representation and Allocation of Authority Between Client and Lawyer); (3) Rule 1.3 (Diligence); (4) Rule 1.4 (Communication); (5) Rule 8.1 (Bar Admission and Disciplinary Matters); and, (6) Rule 8.4 (a), (c), and (d) (Misconduct).

The charges were assigned by this Court to the Hon. Ronald A. Silkworth of the Circuit Court for Anne Arundel County for the conduct of an evidentiary hearing and the rendition of findings of fact and conclusions of law. The hearing occurred over two days,

---

[1] On 1 June 2016, the Court of Appeals adopted (effective 1 July 2016) an order (filed on 6 June 2016) accomplishing, among other things, a reconfiguration and reformatting of the Maryland Lawyers' Rules of Professional Conduct (renamed the Maryland Attorneys' Rules of Professional Conduct) and Title 16 of the Maryland Rules as new Title 19, Chps. 300 and 700, respectively. The Court's June 1 Order provided, however, that "attorneys shall continue on or after July 1, 2016 to be subject to discipline for violations of the current Maryland Lawyers' Rules of Professional Conduct occurring prior to July 1, 2016 . . . ." Because Shuler's conduct which is the subject of this case occurred before 1 July 2016, we shall refer in this opinion to the relevant provisions of the Code of Conduct as it existed prior to 1 July 2016.

14 October and 1 November 2016.[2] Respondent, who lived apparently in South Carolina at the time, participated in the hearings by telephone. *See* Rules 16-757 and 2-513.

On 25 January 2017, Judge Silkworth filed with the Court his written findings of fact and conclusions of law, dated 13 January 2017. He concluded that Respondent violated MLRPC 1.1, 1.2, 1.3, 1.4(a), 1.4(b), 8.1, 8.4(a), 8.4(c), and 8.4(d). In addition, he found that Petitioner demonstrated by clear and convincing evidence nine aggravating factors infecting Respondent's misconduct. Respondent did not persuade Judge Silkworth, by a preponderance of the evidence, of the existence of any mitigating factor.

Petitioner filed no exceptions to Judge Silkworth's findings of fact and conclusions of law, and recommended this Court disbar Respondent, noting also that Respondent stood before the Court suspended from the practice of law in Maryland as a result of a prior disciplinary action, *Atty. Griev. Comm'n v. Shuler*, 443 Md. 494, 117 A.3d 38 (2015). Respondent filed written exceptions. Concurrently with filing her exceptions, Respondent filed a motion requesting the Court to sanction Assistant Bar Counsel Paulick for making allegedly false assertions during the proceedings regarding the amount and payment of the legal fee to Respondent on Mr. Keene's behalf, by his mother, Ms. Gale Scoggins. The Court denies Respondent's motion to sanction Assistant Bar Counsel Paulick.

---

[2] In order to comply with the regulatory requirement that the hearing be completed within 120 days of the service upon Respondent of the order designating the judge to hold the hearing in the case, Petitioner requested, and this Court granted, an extension of time.

Oral argument before the Court of Appeals on Respondent's exceptions and Bar Counsel's recommendation for disbarment was scheduled for a date in March 2017, with notice to the parties. Respondent sought a continuance. The Court, by order of 29 March 2017, granted a continuance to 3 April 2017 and required Respondent's appearance at that time.

Assistant Bar Counsel Paulick appeared before the Court on April 3. Respondent did not, nor did she communicate contemporaneously with the Court as to why she could not appear. The case was submitted on the papers and record. The Court entered a per curiam order disbarring Respondent the same day.[3] We explain now the basis for that order.

STANDARDS OF REVIEW

As Chief Judge Barbera noted, writing for the Court recently in *Atty. Griev. Comm'n v. Sweitzer*, 452 Md. 26, 37, 156 A.3d 134, 140 (2017), *reconsideration denied* (Apr. 21, 2017):

> "In attorney discipline proceedings, this Court has original and complete jurisdiction." *Attorney Grievance Comm'n v. Page*, 430 Md. 602, 626, 62 A.3d 163 (2013). If no exceptions to the hearing judge's findings of fact are filed, this Court may treat the facts as conclusively established. *Attorney Grievance Comm'n v. Kwarteng*, 411 Md. 652, 659–60, 984 A.2d 865 (2009). If exceptions to the hearing judge's findings of fact are filed, we will not overrule the findings unless we are persuaded that they are clearly erroneous. *Attorney Grievance Comm'n v. Mahone*, 435 Md. 84, 104, 76 A.3d 1198 (2013). This Court conducts a *de novo* review of the hearing judge's conclusions of law. *Attorney Grievance Comm'n v. Garcia*, 410

---

[3] Respondent filed a Motion for Rehearing on or about 13 April 2017. The Court, by order dated and filed on 4 May 2017, denied that motion.

3

Md. 507, 515, 979 A.2d 146 (2009). Accordingly, this Court must determine, based on a "clear and convincing" standard of proof, whether sufficient evidence existed in the record to support the hearing judge's conclusions of law. *Attorney Grievance Comm'n v. Tanko*, 427 Md. 15, 27, 45 A.3d 281 (2012).

<u>HEARING JUDGE'S FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

Satisfied that Bar Counsel met the clear and convincing evidence standard placed on it (*see* Md. Rule 16-757(c)) in attorney disciplinary cases, the hearing judge found the following facts, which we summarize.

Ms. Gale Scoggins, mother of Calvin Keene and herself apparently a person of modest means, retained Respondent in March 2011 to represent her son in pursuit of a modification of sentence in two criminal cases in the Circuit Court for Prince George's County.[4] Scoggins paid Respondent $750 in cash to obtain her representation of Keene in the modification matter. According to Md. Rule 4-345(e)(1)(B), governing the revisory power of a sentencing court over sentences, the sentencing court's ability to revise/modify a sentence expires five years "from the date the sentence originally was imposed . . . ." Accordingly, because Keene had been sentenced on 14 August 2008, any

---

[4] The hearing judge took judicial notice of certain facts appearing on the Maryland Judiciary Case Search engine of the Judiciary's website regarding these cases, to wit: (1) a Motion for Reconsideration had been filed by Keene, through his counsel at the time, on 9 September 2008, which motion remained unacted upon technically through the time of the evidentiary hearing in the present attorney disciplinary case; and, (2) an Application for Review of Sentence filed concurrently with the Motion for Reconsideration had been denied by a three-judge panel on or about 19 November 2008. Respondent here, it appeared to the hearing judge, had not checked the criminal case files or other available sources to learn of this information in the course of her representation of Keene.

4

modification had to be acted on or before 14 August 2013, or the sentencing court would lose its authority to act in such regard.

Respondent entered her appearance as Counsel for Keene in the two criminal matters on 8 June 2011. Although she acted promptly to gain access to Keene's pre-trial sentencing report in the cases (which the trial court granted on 14 June 2011), Respondent's communications with Scoggins about the sentence modification initiative became sporadic quite soon thereafter. According to Scoggins, many of her telephone and text messages to Respondent seeking status updates went unanswered for weeks at a time.

According to Scoggins, it was not until 3 April 2012 that Respondent recommended that October 2012 would be the "best time" to file a Motion for Modification of Sentence "because that would be five years after the offense." Respondent promised to visit Keene in jail in May of 2012 and to seek a meeting later in April 2012 with the State's Attorney's Office to attempt to gain support for sentence modification. Respondent did none of these things in the time frames promised or otherwise, and continued not to respond timely to Scoggins's letters seeking updates on efforts.

On 5 February 2013, Scoggins sent Respondent an email expressing concern about Respondent's uncommunicative posture. Respondent responded to the email, offering excuses about having personal problems that prevented her from receiving telephone, email, or regular mail. She promised that she would visit Keene and file the modification motion later in February. She did not accomplish either task, however. Similar

5

representations were made by Respondent to Scoggins in March, May, July, and August of 2013, all of which proved equally hollow.

In a surprise to Scoggins, Respondent requested on 2 October 2013 an additional $500 to complete the representation of Keene, stating that Respondent discovered only lately that Keene had been sentenced in two criminal cases, rather than one (seemingly overlooking the fact that on 8 June 2011 she entered her appearance as Keene's counsel in both cases). On or about 4 February 2014, Scoggins paid an additional $300, as an installment, to Respondent.

The cycle of unfulfilled promises to act by Respondent resumed in May, June, and September of 2014. On 15 October 2014, Respondent represented to Keene that she was "in the process of filing" a Motion for Post-Conviction Relief on his behalf. At the same time, she solicited an additional $400, noting that the new total fee would be $1,500. Respondent stated, however, that the payment of the balance claimed would not prevent her from completing her representation of Keene.[5]

Apparently appreciating that, by operation of the time bar of Md. Rule 4-345(e)(1)(B), the trial court no longer could grant relief to modify his sentences, Keene acquiesced initially in January 2015 to Respondent's suggestion to file instead a post-conviction petition. Despite all that had gone before, Respondent, in February 2015, now used the excuse that, because pursuit of the modification motion was no longer viable,

---

[5] Scoggins paid, by February 2015, the full additional balance demanded by Respondent.

6

she needed more time to draft a post-conviction petition. She promised Scoggins that it would be filed before the end of March 2015. Instead, Respondent filed a motion to withdraw as Keene's counsel on 30 April 2015, having not filed any of the motions for relief she was engaged to prepare and prosecute, when she learned that Keene had filed a bar complaint about her representation.

Indeed, Keene filed with Petitioner on 16 February 2015 a complaint against Respondent. Respondent did not respond to Bar Counsel's multiple requests in February and March for a response to the complaint. She did respond, of a sort, to Bar Counsel's third invitation by advising Bar Counsel that she had been diagnosed with pneumonia on or about 26 February 2015. Thereafter, Respondent rebuffed Bar Counsel's investigatory requests for information and indicated that she would respond, if at all, solely to emails. Respondent's intransience continued to the time of public charges in the matter.

After the two days of hearings, the hearing judge concluded as follows regarding the charges against Respondent and relevant aggravating/mitigating factors bearing on the sanction, if any:

### Rule 1.1 Competence

Rule 1.1 provides that:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for representation.

If an attorney "fails to act or acts in an untimely manner, resulting in harm to his or her client," generally the Court finds a violation of Rule 1.1. *Atty. Griev. Comm'n v. Brown*, 426 Md. 298, 319, 44 A.3d 344, 357 (2012). Evidence that an attorney failed "to apply the requisite

7

thoroughness and/or preparation in representing a client is sufficient alone to support a violation of Rule 1.1." *Atty. Griev. Comm'n v. McCulloch*, 404 Md. 388, 398, 946 A.2d 1009, 1015 (2008); *Atty. Griev. Comm'n v. Garrett*, 427 Md. 209, 223, 46 A.3d 1169, 1177 (2012) (concluding that failure to take "necessary, fundamental steps to further the client's case" is a violation of Rule 1.1).

The Attorney Grievance Commission argues that Respondent violated this rule because she failed to request a hearing on behalf of her client on the two motions, Motion for Reconsideration of Sentence and Application of Review of Sentence, filed prior to the start of her representation. However because this Court takes Judicial Notice of the fact that the Motion for Reconsideration was held sub curia and the Application for Review of Sentence was acted upon by a three judge review panel and the sentence was confirmed without change by Order of Court dated November 19, 2008, this Court concludes that requesting a hearing would not have been the proper procedural step regarding the Application for Review of Sentence. By the time that Respondent was heard, this was already finally resolved. Because of this, the Court cannot find, by clear and convincing evidence, that the Respondent was acting as an incompetent attorney when she failed to obtain a hearing on the review Application.

The Court does find, however, that the Respondent violated Rule 1.1 because she failed to check on the status of her client's Motion for Reconsideration of Sentence and inform her client of that status. Instead, she left him unapprised of the status of those motions and allowed the five year deadline to run out without checking on the status of those motions or requesting a hearing on the Reconsideration request. It is clear that Respondent was aware of the five year deadline because she advised Ms. Scoggins on March 14, 2013 that "It will be 5 years and time to file in Motion in May or June." []<sup>[6]</sup> Failing to check on the status of the case or promptly inform her client at any point was clearly incompetent representation. While it is not clear that the trial judge would have granted a modification, any opportunity to address the trial judge to convince him was lost.

Respondent also violated Rule 1.1 by giving her client contradictory and false information. After the deadline passed for a Motion for Modification to be ruled on, Respondent told Ms. Scoggins and Mr. Keene that there was no deadline and continued to attest that she would file a

---

<sup>6</sup> Ellipses appear in this opinion to denote where we have deleted supporting citations to the record appearing in the hearing judge's conclusions of law.

8

Motion for Modification, even though one had already been filed by her client. []

It is clear that the Respondent gave her client misinformation about the status of his case because she had, in violation of Rule 1.1, not made an attempt to verify the status of his case or to take any of the next procedural steps. Had Respondent appropriately reviewed his case file, she would have determined that a significant portion of Mr. Keene's sentence (18 years) was to be served without the possibility of parole. Appropriate research would have been required to determine his eligibility for drug treatment pursuant to Md. Code Ann., Health-Gen. § 8-507. This would have required a separate motion which would not have been barred by the five year limit discussed herein. This was not done.

**Rule 1.2 Scope of Representation and Allocation of Authority Between Client and Lawyer**

Rule 1.2 provides that:

(a)     Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial, and whether the client will testify.

When an attorney fails to file the legal documents that a client retained her to file, the attorney violates Rule 1.2. *See Atty. Griev. Comm'n v. Kreamer*, 404 Md. 282, 946 A.2d 500 (2008) (holding that an attorney violated Rule 1.2 when he failed to dissolve the client's corporation as per the client's request); *Atty. Griev. Comm'n v. Granger*, 374 Md. 438, 823 A.2d 611 (2003) (holding that an attorney violated Rule 1.2 when he failed to immediately file for bankruptcy on her behalf where the client instructed the attorney to do so in order to avoid foreclosure on her home).

Here, Respondent violated Rule 1.2 by failing to consult with her client in order to discuss how to pursue the client's objectives in light of the fact that a Motion for Modification of Mr. Keene's criminal sentence had already been filed prior to the expiration of the trial court's jurisdiction over

9

the matter in accordance with Maryland Rule 4-345(e)(1)(B). Respondent failed to determine the status of the previously filed application for Review of Sentence, although as stated herein, that issue was resolved prior to Respondent being retained. Respondent made no mention of the impact of a sentence without parole on the modification previously filed. Nor did she consider Md. Code Ann., Health-Gen. § 8-507.

### Rule 1.3 Diligence

Rule 1.3 provides that:

A lawyer shall act with reasonable diligence and promptness in representing a client.

An attorney violates this Rule when she takes no action whatsoever in representing her client. *Atty. Griev. Comm'n v. De La Paz*, 418 Md. 534, 554, 16 A.3d 181, 193 (2011); *Atty Griev. Comm'n v. Shakir*, 427 Md. 197, 205, 46 A.3d 1162, 1167 (2012). Failing to keep a client informed as to the status of the case and failing to respond to the client's inquiries also violates Rule 1.3. *See Atty. Griev. Comm'n v. Park*, 427 Md. 180, 192, 46 A.3d 1153, 1160 (2012). In this case, Respondent violated Rule 1.3 by failing to meet with Mr. Keene in order to discuss the necessary steps to be taken in light of the fact that a Motion for Modification of Mr. Keene's criminal sentence had already been filed. Furthermore, Respondent failed to determine the status of the previously filed application for Review of Sentence. Respondent also violated Rule 1.3 by failing to file or pursue the previously filed Motion for Modification on Mr. Keene's behalf while the judge still had jurisdiction over the matter (i.e., within five years) pursuant to Maryland Rule [4-345](e)(1)(B) [*sic*]. Respondent further failed to consider what options Mr. Keene had for treatment in light of the sentence [he] was serving without parole.

### Rule 1.4(a) Communication

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
(2) keep the client reasonably informed about the status of the matter;
(3) promptly comply with reasonable requests for information; and

10

(4) consult with the client about any relevant limitation on the lawyers' conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.

Comment [5] to Rule 1.4 explains that:

"[t]he client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued . . . . Adequacy of communication depends in part on the kind of advice or assistance that is involved. *Atty. Griev. Comm'n v. Nqrasimhan*, 438 Md. 638, 656, 92 A.3d 512, 523 (2014).

Paragraphs (a)(2) and (3) of this Rule, respectively, require a lawyer to keep her client "reasonably informed" about the status of the case, and to promptly respond to reasonable requests for information from the client. *Atty. Griev. Comm'n v. Van Nelson*, 425 Md. 344, 354-55; 40 A.3d 1039, 1045 (2012). In *Van Nelson*, the Court of Appeals found that the attorney failed to return his client's persistent telephone calls and email requests. *Id.* Further, the client learned that a $10,000.00 payment she had made had been seized by the federal government not from her own attorney, but from opposing counsel. *Id.* She only learned this by virtue of her own efforts to secure information about her case. *Id.* As such, the attorney in Van Nelson did not keep his client reasonably informed. *Id.* The Court found, therefore, by clear and convincing evidence that Van Nelson violated Rule 1.4(a)(2) and (3). *Id.*

In the instant case, Respondent failed to "promptly inform the client of any decision . . . with respect to which the client's informed consent is required" when she failed to notify him that she would be unable to pursue the previously filed Motion for Modification of Sentence while the trial judge still had jurisdiction over the matter pursuant to Maryland Rule 4-345(e)(1)(B). After she missed the deadline, she failed to inform Mr. Keene that the court no longer had jurisdiction. Instead, she tried to convince him that a Motion for Post Conviction Relief would be more advantageous in his case. When Mr. Keene and Mrs. Scoggins informed Respondent that they believed that there was a five year deadline, she brushed aside their concerns by saying, "Of course it is not to[o] late. Attorneys usually wait until 5 years to do it and just don't do it sooner because it has been the practice of the courts in Maryland to want the person to wait at least 5 years to do so. But no, it is never a time limit." [] Respondent also failed to investigate the status of the Application for

11

Review of Sentence although this failure caused no harm to Mr. Keene because it was due long before Respondent was even hired and there was nothing she could have done to change or appeal the ruling. Lastly, as stated herein, Respondent failed to communicate with Mr. Keene [regarding] [*sic*] his sentence without parole and any options available to him as a result.

### Rule 1.4(b) Communication

Rule 1.4(b) requires that a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation. *See Atty. Griev. Comm'n v. Narasimhan*, 438 Md. 638, 658-59, 92 A.3d 512, 523-24 (2014) (citing *Atty. Griev. Comm'n v. Rand*, 429 Md. 674, 716, 57 A.3d 976, 1001 (2012)). In *Rand*, the Court of Appeals held that, when analyzing whether or not an attorney has violated Rule 1.4(b), [] its analysis needs to "take into account the entire interaction between [the attorney] and [the client] and the information that was communicated." *Id.* at 717, 57 A.3d at 1001.

In the instant case, Mrs. Scoggins's testimony and her emails with the Respondent clearly show that Respondent did not explain the matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation. Respondent continually promised that she would visit Mr. Keene in jail to discuss his case, file a Motion for Modification of Sentence, and schedule a hearing before the judge. She never did so. She did not explain to Mr. Keene and Mrs. Scoggins that the judge only had jurisdiction over Mr. Keene's criminal matter for five years. In fact, when confronted by the client and his mother, she denied that there was a five year deadline. Her failure to communicate that there was a five-year time limit within which Mr. Keene's sentence could be modified was a violation of Rule 1.4(b). See *Rand* at 429 Md. 674, 716, 57 A.3d 976, 1001. Further, Respondent did not determine the status of the Application for Review of Sentence and explain that status to Mr. Keene. Respondent failed to review and explain to Mr. Keene his options in light of his sentence without parole, i.e., Md. Code Ann., Health-Gen. § 8-507.

### Rule 8.1 Bar Admission and Disciplinary Matters

Rule 8.1(b) makes it a violation to "knowingly fail to respond to a lawful demand for information . . . [from Bar Counsel]." *See Atty. Griev. Comm'n v. Garrett*, 427 Md. 209, 226, 46 A.3d 1169, 1179 (2012) (failing to respond to Bar Counsel's request for information is a violation of Rule 8.1(b)). *See also Atty. Griev. Comm'n v. Kreamer*, 432 Md. 325, 336, 68 A.3d 862, 869 (2013) (failing to respond to Bar Counsel after being asked

repeatedly, promising to do so, and then never doing so, constituted a violation of Rule 8.1(b)).

Here, Respondent violated Rule 8.1(b) because she failed to meaningfully answer Petitioner's correspondence regarding her representation of Mr. Keene. Petitioner sent three letters to Respondent before she provided a response to the Complaint. When she did respond, her responses were incomplete. For example, she answered, "You should ask Mr. Keene for copies of the letters" and "I will not talk to you because you are a dishonest person." [] When Petitioner's Investigator contacted Respondent, she refused to return his calls. When Assistant Bar Counsel asked Respondent to return the Investigator's calls, Respondent replied that she would not do so. *Id.* Finally, when Assistant Bar Counsel sent correspondence asking Respondent for additional information, she replied, "I spent my entire summer dealing with your bogus claims involving Mr. Kevin Wilson; I will not spend my entire summer with this matter. Therefore, it will not be within 10 days that I will review this matter but in September." []  In her dealings with Bar Counsel, whether it be refusing to accept certified mail, refusing to speak to Bar Counsel's investigator, or refusing to respond to Bar Counsel requests for information in a timely fashion,  Respondent violated Rule 8.1 in that she "knowingly fail[ed] to respond to a lawful demand for information from [an] authority."

### Disciplinary Rule 8.4(a) Misconduct

"It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another." *Id.*  Because the Court finds that Respondent has violated Rules 1.1, 1.2, 1.3, 1.4(a) and (b), 8.1(b), and 8.4(d), it therefore finds that Respondent has violated Rule 8.4(a).

### Rule 8.4(c) Misrepresentation

Rule 8.4(c) provides, "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"  "Dishonest acts, in and of themselves are violative of [RULE] 8.4(c)." *Atty. Griev. Comm'n v. Barnett*, 440 Md. 254, 266, 102 A.3d 310, 318 (2014) (citation omitted).

In this case, there is clear and convincing evidence that Respondent made several misrepresentations to Mr. Keene and Ms. Scoggins. First, she continually represented that she would visit Mr. Keene, visit the State's Attorney's Office, and file a Motion for Modification of Sentence for him,

13

but after having the representation for almost four years, she never did so. []

Next, she misrepresented to Mrs. Scoggins and Mr. Keene that there was no deadline for obtaining a hearing on a Motion for Modification of a Sentence. [] Specifically, she stated, "time to file has not passed . . . . Usually for serious offenses the [] modification is requested within [f]ive years . . . a little more time for filing would be beneficial." Once Mr. Keene and Mrs. Scoggins confronted Respondent with the knowledge they obtained from other sources regarding the five year deadline, Respondent again misrepresented the significance of the deadline to them by stating, "Of course it is not to[o] late. Attorneys usually wait until 5 years to do it and just don't do it sooner because it has been the practice of the courts in Maryland to want the person to wait at least 5 years to do so. But no, it is never a time limit. It can be done at any time. It can be done sooner than 5 years or later." []

Knowing that this statement was false, Respondent then tried to convince Mr. Keene and Ms. Scoggins that a Motion for Post-Conviction Relief would be more beneficial to Mr. Keene. [] When Mr. Keene persisted in having a Motion for Modification of Sentence filed instead[,] Respondent then drafted a Belated Motion for Modification of Sentence. [] She further misrepresented the reason for her delay in filing the motion when, in the body of the motion, she states: "The undersigned counsel informed the defendant that the court does not have jurisdiction to modify a Sentence after five years of sentencing under Maryland Rule 4-345(b) but given the following circumstances he should be entitled to a belated motion for modification of his sentence." [] She then blamed Mr. Keene for failing to communicate with her. [] She blamed Mrs. Scoggins for failing to timely pay her fees. [] Finally, she blamed the jail for refusing to allow her visitation. []

### Rule 8.4(d) Misconduct

Rule 8.4(d) states that it is professional misconduct for an attorney to "engage in conduct that is prejudicial to the administration of justice." Conduct which is likely to impair the public confidence in the profession, impact the image of the legal profession and engender disrespect for the court is conduct prejudicial to the administration of justice. *Atty. Griev. Comm'n v. Childress*, 360 Md. 373, 381-82; 758 A.2d 117, 121 (2000). Respondent's failure to pursue a previously filed Motion for Modification of Sentence on Mr. Keene's behalf is a violation of Rule 8.4(d). Her failures constitute conduct which is likely to impair public confidence in [] the legal profession.

14

## AGGRAVATING FACTORS

In *Atty. Griev. Comm'n v. Shuler*, 443 Md. 494, 506-07, 117 A.3d 38, 46 (2016), the Court of Appeals stated:

> This Court sanctions a lawyer not to punish the lawyer, but instead to protect the public and the public's confidence in the legal profession. This Court accomplishes these goals by: (1) deterring other lawyers from engaging in similar misconduct; and (2) suspending or disbarring a lawyer who is unfit to continue to practice law.
>
> In determining an appropriate sanction for a lawyer's misconduct, this Court considers: (1) the MLRPC that the lawyer violated; (2) the lawyer's mental state; (3) the injury that the lawyer's misconduct caused or could have caused; and (4) aggravating factors and/or mitigating factors.
>
> Aggravating factors include: (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the MLRPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court or the hearing judge; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.
>
> Mitigating factors include: (1) the absence of prior attorney discipline; (2) [the] absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify [the misconduct's] consequences [ ]; (5) full and free disclosure to the Commission or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) [a] physical disability; (9) a mental disability or chemical dependency[,] including alcoholism or drug abuse[,] where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency

15

or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct[,] and [the misconduct's] recurrence [] is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the MLRPC; and (14) unlikelihood of repetition of the misconduct.

In the instant case, aggravating factors 1, 2, 3, 4, 5, 7, 8, 10, and 12 are present.

Factor (1), prior attorney discipline[,] is present because Respondent was previously suspended from the practice of law in July 2015 for similar misconduct, to wit, abandoning a client, failing to properly communicate with a client, and conduct prejudicial to the administration of justice. See *Atty. Griev. Comm'n v. Shuler*, 443 Md. 494, 117 A.3d 38 (2015).

Factor (2)[,] a dishonest or selfish motive[,] is apparent in Respondent's violation of Rule 8.4(c) by misrepresenting to Mr. Keene and Ms. Scoggins that she had not missed the deadline to file Mr. Keene's sentence modification. Further, a dishonest or selfish motive was present here when Respondent refused to refund any of Mr. Keene's funds.

A pattern of misconduct (Factor 3) is present here because, over the course of four years, Respondent represented to Mrs. Scoggins that she would visit Mr. Keene and file a motion on his behalf but she never did. Her violations of Rules 1.1, 1.3, 1.4, and 8.4(c) and (d) are numerous throughout the representation.

Further, as for factor (4)[,] multiple violations of the RULE, Respondent has violated Rules 1.1, 1.2, 1.3, 1.4, 8.1(b) and 8.4(a), (c), and (d) in this matter. Factor (5), bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court or the hearing judge, is also present in this case. Respondent blatantly stated, "I refuse to speak with your investigator" and "I will not respond within 10 days, but in September." []

Factor (7), a refusal to acknowledge the misconduct's wrongful nature[,] is present in the instant matter. Respondent does not take responsibility for her mistakes, but instead blames Mr. Keene, Ms. Scoggins, and the jail for her failures to complete the representation.

As for factor (8)[,] the victim's vulnerability, Mr. Keene was a vulnerable client because he was incarcerated.

Respondent has also shown indifference to making restitution or rectifying the misconduct's consequences (factor 10). She has never

apologized to Mr. Keene or Mrs. Scoggins for missing the deadline to modify Mr. Keene's sentence. She has never offered to refund their money.

Finally, factor (12), the likelihood of repetition of the misconduct, is also present here. Respondent refuses to take responsibility for her errors, blames her clients for her mistakes, and has never apologized to Mr. Keene or Ms. Scoggins.

Respondent presented no evidence that would constitute mitigation.

(formatting edited for uniformity).

## RESPONDENT'S EXCEPTIONS

Respondent groups loosely her written exceptions under five headings. We shall summarize them, as best as we can.[7]

1. **Keene knew about the five-year deadline for obtaining a hearing on a Motion for Sentence Modification, thus undermining the hearing judge's findings or conclusions. Keene's alleged equivocation about which motion to pursue, Respondent's alleged explanation to Keene of his legal options over the phone, and her communication to Scoggins that she was unable to take action in June 2013 until her license to practice law was reinstated impugn further the hearing judge's findings or conclusions.**

   **A. Summary**

---

[7] We are unable to make sense (logically, grammatically, or otherwise) of some of Respondent's written exceptions, illustrated by her following statement: "The claims that Ms. Shuler brushed the respondents statement of the 5 years as being misleading." Additionally, some of Respondent's "arguments" do not even challenge the findings or conclusions of the court. For example, Respondent states that "the Court cannot find, by clear and convincing evidence that the Respondent was acting as an incompetent attorney when she failed to obtain a hearing on the Review Application," because, "[b]y the time that Respondent was heard, this was already finally resolved." This statement is actually an unattributed quotation from the hearing court's conclusions of law, the relevance of which to Respondent's exceptions arguments is unclear, because the court determined her incompetence for a variety of other reasons.

We shall not re-imagine Respondent's exceptions, but rather, like the proverbial Summer rule of golf that directs that one play the ball where and as one finds it, we shall treat largely her exceptions "as is."

17

Respondent expounds at length that the court's findings of fact show that Keene knew all along about the five-year deadline, arguing, apparently, that she could not have misled Keene during the course of her representation. Respondent maintains that 1) "she advised Ms. Scoggins on March 14, 2013 that 'It will be 5 years and time to file [a] Motion in May or June;'" 2) "Keene['s] prior attorney Michael Blumenthal informed Keene of the deadline . . . ;" 3) "Keene testified that inmates told him [about the five-year deadline];" and, 4) Respondent informed Keene, in November 2014, that the five-year period lapsed. In a related argument, Respondent states that she was not dishonest about the existence of the deadline, nor did she attempt to cover-up her failure to file anything by the deadline: "the client himself when confronted during deposition admitted that he received the 'Belated' motion. In reading the motion is clearly stated that he missed the deadline and was informed that he did."

In another theme, Respondent argues that Keene changed his mind several times over the course of the representation about which procedural option he would like to pursue, preventing Respondent from obtaining consent to any specific course of action. Respondent asserts that a letter from Keene to her shows that Keene "changed his mind because he wanted the [Post-Conviction] Petition filed first and the Modification later." She states that "you see a change of mind in November of 2014 from a Petition to Motion for Modification then a change of mind from Motion for Modification to Petition in January." Respondent contends that "from April of 2011 to November of 2014[, Keene] stated he did not want a Motion for Modification of his Sentence filed[.]"

18

Respondent asserts also that she provided proper legal advice to Keene about his legal options. She argues that her "hand written notes" confirm that she advised Keene thoroughly, and that she did not try to convince unduly Keene or Scoggins to pursue a Petition for Post-Conviction Relief *in lieu* of sentence modification. Respondent states that she counseled Keene that "due to the history of the case [] it was unlikely that the Motion [for Reconsideration] would be granted . . . . Instead of providing a compelling argument that he could convince a Judge Keene would state he wanted a Petition for Post-Conviction Relief filed."

Respondent cites a 4 June 2013 email correspondence to Scoggins, which Respondent claims "[t]he hearing Judge ignored," and which stated that, for the month of June, she could not "fil[e] the case" because she needed to have her attorney license reinstated; she concluded, "[i]f you can not wait until then I will suggest to get another attorney."

**B. Analysis**

Respondent asserts correctly that Keene knew about the five-year period, imposed by Md. Rule 4-345(e)(1)(B), in which a sentencing court has revisory power over a sentence. This fact, however, has no exculpatory value for Respondent, who, according to the record, misled Keene and Scoggins by: 1) responding on 2 October 2013 to a 1 October 2013 email from Scoggins, in which Scoggins stated that Calvin "see[ms] to think that his chance for a sentence of modification is past due," that the "time to file has

19

not passed;"[8] 2) promising repeatedly to visit Keene in prison; and, 3) representing repeatedly to Keene and Scoggins that she would file either a Motion for Modification of Sentence or a Petition for Post-Conviction Relief, neither of which she did. This non-exhaustive list of broken promises and misinformation furnished by Respondent to Keene and Scoggins provides ample evidence from which to find that Respondent misled Keene over the course of the representation.

Respondent argues that her inability to obtain Keene's consent on any particular course of action foiled her ability to take any legal action on his behalf for nearly four years. Under Rule 1.2(a), however, attorneys have the implied authority to make legal decisions that align with the stated goals of their clients: "an attorney shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. An attorney may take such action on behalf of the client as is impliedly authorized to carry out the representation." Respondent appears to cite Keene's alleged changes of mind to justify her failure to take any actions on his behalf.

Even if the hearing judge had credited Respondent's "hand written notes" as bolstering Respondent's argument that she discussed Keene's legal options with him over the phone on one occasion, she failed repeatedly to meet with him—for years—to keep him apprised of any progress (or lack thereof) in his case. The hearing judge was

---

[8] As noted earlier, the five-year period expired on 14 August 2013, five years after his 14 August 2008 sentencing.

justified in not being persuaded by Respondent's explanations of alleged difficulties beyond her control for failing to obtain direct, face-to-face access to the incarcerated Keene.

The fact that Respondent sent an email approximately two months before the end of the five-year period, stating that she could not work on Keene's behalf until she got her law practice license reinstated and that Keene should find another attorney if "[he] can not wait until then," erects no safe harbor for Respondent. At that point, she had done nothing for her client for two years. Her self-inflicted loss of her law license at the end of the period did not excuse any of her preceding misconduct.

We overrule this grouping of exceptions to the hearing judge's fact-finding. Additionally, assuming that Respondent's argument that "[t]he [hearing court] contradicts itself" by "find[ing] that Keene was mislead" is a challenge to the court's conclusion that Respondent violated Rule 8.4(c), we overrule this exception to the hearing judge's conclusion of law with respect to misrepresentation because Respondent did in fact mislead Keene.

**2. Scoggins and/or Keene failed to pay fully and timely Respondent's fee. Keene changed his mind as to which remedy he wanted Respondent to pursue.**

**A. Summary**

"On or about February 4, 2014, Ms. Scoggins paid the Respondent an installment of $250.00; not $300.00; the court err[]s on this fact . . . . Ms. Scoggins paid additional amount of $150.00. Both amount of $300 and $150.00 were after the August 2013 deadline." Respondent indicates that this "is relevant because the client kept pretending

21

he would pay and then would change his mind causing a delay by saying he wanted something else to be filed. Ms. Shuler stated to the client that if he would not pay by a certain date she would withdraw then the client would say that he wanted additional work done or something else preventing Ms. Shuler from filing the document and/or withdrawing from the case."

**B. Analysis**

The record includes an exchange of emails between Respondent and Scoggins on 4 February 2014 in which Scoggins wrote: "Good morning[,] the check has been mail[ed] off. Don't put the check in the bank until Friday because it will bounce. Also I was able to send $300 and not $350 as stated funds added up wrong. . . ." In light of this email, we hold not to be clearly erroneous the judge's finding that Scoggins paid Respondent an installment of $300 on or about that date.

Respondent ties the client's alleged failure to render full and timely payment to her allegation that Keene prevented Respondent from performing any work. If indeed Keene was a difficult client, the Rules allow an attorney to withdraw from representing a client if "the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled[.]" Rule 1.16(b)(5). Instead, Respondent did not do so until learning that Keene had filed a complaint with Bar Counsel.

We override this grouping of exceptions.

3. **Keene refused to consent to any course of action and failed to complain preliminarily about Respondent's misconduct. Respondent offered a partial refund of fees paid.**

22

**A. Summary**

Under this heading, Respondent rehashes her arguments that she was unable to perform any legal work for her client because of his alleged failure to pay timely and in full, her client's alleged equivocation on which legal route to pursue, and her client's alleged failure to consent to a particular course of legal action.

She adds to this iteration of oft-repeated exceptions the argument that, prior to filing with Petitioner on 16 February 2016 his bar complaint against Respondent, "Keene never complained to the court in the numerous letters he wrote after the deadline was missed and never complained to Ms. Shuler at all."

Respondent argues also that, "[c]ontrary to the court conclusion that Ms. Shuler never attempted to return the money to Mr. Keene[,]" she offered Keene a refund: "Ms. Shuler suggested the refund because . . . she could clearly see that Keene was going back and forth in the filings and becoming a problem client."

**B. Analysis**

We overrule this group of reiterated exceptions for the reasons expressed previously in addressing related exceptions.

In addition, Respondent's argument that Keene failed to complain about Respondent's conduct prior to filing his official complaint appears to be either 1) a factual argument that does not seem to challenge any of the hearing judge's factual findings; or, 2) a factual argument joined with an implied legal argument that Keene had a duty to mitigate before lodging an official complaint, and, having failed allegedly to do

23

so, one could assume reasonably only that he was not concerned about Respondent's representation. The value of this argument to Respondent is unclear to us, and, in any event, the record includes years of email correspondence to Respondent from Scoggins articulating her and her son's concerns about Respondent's representation.

Regarding Respondent's exception to a hearing judge's legal conclusion, we assume that she is referring to the judge's determinations regarding aggravating factors that ". . . a dishonest or selfish motive was present here when Respondent refused to refund any of Mr. Keene's funds[;]" and, regarding the factor of indifference to making restitution or rectifying the misconduct's consequences, "[s]he has never offered to refund their money." On 14 June 2016, Respondent filed, as Exhibit F in support of her Motion to Vacate Entry of Default and Request for Sanctions Against Amy Paulick and Glenn Grossman, an email to Scoggins dated 24 January 2014, which stated, in part: "At this time the option I know that time is pas[s]ing by fast so I suggest 1) Pay the $750.00 or 2) I can reimburse you [] a portion of the $750.00 you already paid." Notwithstanding Respondent's correct assertion that she offered to Scoggins a partial refund in January 2014, we overrule nonetheless her exception on this point. With respect to the aggravating factor of a dishonest or selfish motive, the hearing judge identified an additional supporting factual basis: Respondent's "misrepresent[ation] to Mr. Keene and Ms. Scoggins that she had not missed the deadline to file Mr. Keene's sentence

24

modification."[9]  Similarly, regarding the factor of indifference, the judge explained also that "[s]he has never apologized to Mr. Keene or Mrs. Scoggins for missing the deadline to modify Mr. Keene's sentence."

## 4. Respondent could not visit Keene in jail because of institutional racism in the administration of the detention facility where Keene was housed.[10]

### A. Summary

Under this heading, Respondent posits a justification for failing to visit Keene in jail, after promising multiple times to do so: "due to racism the institution denied her entry.  Ms. Shuler put in numerous requests.  If the requests were granted Ms. Shuler would have visited the client. . . .  Ms. Shuler was denied entry based on her race."

### B. Analysis

Respondent testified at the evidentiary hearing that "an employee [of the jail] named April told me directly that she did not believe I'm an attorney. . . . She said because my speech sound just like my client. . . . So they have their own rules about who they're going to let into that institution."  Scoggins testified, however, that "I even called myself, to the prison, and they said one thing they don't do, is refuse an inmate visit[],

---

[9] It remains a glaring flaw in Respondent's array of neglect that she failed to learn that Keene's prior lawyer had filed, prior to her involvement, a Motion for Reconsideration of Sentence that remained undisposed.  Thus, she could have spared Scoggins and Keene a lot of time, anguish, and fees by simply seeking a timely hearing on that motion.

[10] Respondent restates in the heading for this fourth group of factual exceptions her arguments that Keene failed allegedly to pay the legal fee in full, changed frequently his mind about the legal vehicle he wished to pursue, and withheld consent for Shuler to act, preventing her from following through with taking actions on Keene's behalf.

even if they on lock-down, from they lawyer." The hearing judge was entitled to credit Scoggins's live testimony on this score over Respondent's uncorroborated and sweeping claims of racism. Moreover, the record does not include any convincing evidentiary support for Respondent's allegation that the jail personnel prevented Respondent from visiting Keene for improper reasons.

We overrule this exception.

## 5. Respondent did not refuse intentionally to comply with Bar Counsel's demands for information.

### A. Summary

Respondent argues that she did not receive Assistant Bar Counsel's 25 February 2015 request for comments regarding Keene's complaint, and that she did not refuse delivery of the second request sent on 24 March 2015. Respondent states that 1) the claim that she refused delivery is "ridiculous;" 2) she previously requested that communications be sent by email; and, 3) because of her "temporary relocat[ion] to North Carolina[,]" she "was not living at the address the mail[] was sent to . . . ."

Respondent argues also that "[she] never refused to answer any questions in April of 2015 about the Keene case and did in fact speak with the investigator who only demanded that she consent to an indefinite suspension."

Finally, Respondent maintains that she had addressed already the Commission's July 2015 requests, and that in any event, the 10-day period to respond to "over 100 requests and 50 pages of documents" was burdensome and unreasonable.

### B. Analysis

26

Respondent's express arguments do not overcome the ample evidence in the record from which the hearing judge concluded that she violated Rule 8.1(b), knowingly failing to respond to lawful demands for information from a disciplinary authority. For example, as pointed out in the hearing judge's conclusions of law, Respondent stated, in response to a 30 June 2015 request from the Attorney Grievance Commission for information within ten days about Respondent's representation of Keene, ". . . because I spent my entire summer dealing with your bogus claims involving Mr. Kevin Wilson [another of her clients], I will not spend my entire summer with this matter. Therefore, it will not be within 10 days that I will review this matter but in September."

We overrule these exceptions.

## SANCTION

None of Respondent's exceptions are sufficient to turn the tide against the hearing judge's conclusions that Respondent violated Rules 1.1, 1.2(a), 1.3, 1.4(a) and (b), 8.1(b), and 8.4(a), (c), and (d). She does not persuade us that any of the hearing judge's findings of fact are clearly erroneous, nor do her arguments convince us that the judge drew any legal conclusions without clear and convincing evidence. In consideration of these violations, Bar Counsel "recommends that Respondent be disbarred from the practice of law based on her dishonest conduct, multiple aggravating factors, and her prior disciplinary history."

> In arriving at the appropriate sanction, we are
> guided by our interest in protecting the public and the
> public's confidence in the legal profession. The purpose of
> [disciplinary] proceedings is not to punish the lawyer, but
> should deter other lawyers from engaging in similar conduct.

27

> The public is protected when we impose sanctions that are commensurate with the nature and gravity of the violations and the intent with which they were committed.

*Atty. Griev. Comm'n v. Patton*, 432 Md. 359, 379, 69 A.3d 11, 23 (2013) (quoting *Atty. Griev. Comm'n v. Guida*, 391 Md. 33, 61, 891 A.2d 1085, 1101 (2006)).

> A broad universe of misbehavior is encompassed by MLRPC 8.4(c). Dishonesty is the broadest of the four terms, and encompasses, *inter alia,* conduct evincing a lack of honesty, probity or integrity of principle; [a] lack of fairness and straightforwardness. . . . Thus, what may not legally be characterized as an act of fraud, deceit or misrepresentation may still evince dishonesty. Clients trust rightfully their attorneys with their most private affairs, and accordingly attorneys must exercise the utmost good faith, fairness, and fidelity towards them. Attorneys violate MLRPC 8.4(c) when they misrepresent to their clients the status of their clients' cases, or conceal material information from their clients, even if they have not misrepresented explicitly the information.

*Atty. Griev. Comm'n v. Thomas*, 440 Md. 523, 555, 103 A.3d 629, 647–48 (2014) (citations and quotations marks omitted).

As discussed above, Respondent engaged in dishonest conduct by failing to follow through on her promises to visit Keene in jail and file motions on his behalf, and by misrepresenting the operation of the five-year deadline for obtaining a disposition hearing on a Motion for Modification of Sentence. She appeared also to fail to recognize that Keene's prior counsel had filed an unacted-upon sentence modification motion because she spent considerable time promising to prepare and file such a motion. "Disbarment ordinarily should be the sanction for intentional dishonest conduct." *Atty. Griev. Comm'n v. Vanderlinde*, 364 Md. 376, 418, 773 A.2d 463, 488 (2001) (explaining that intentional dishonesty "is closely entwined with the most important matters of basic character to such a degree as to make intentional misconduct by a lawyer almost beyond

excuse."). We have disbarred attorneys for misconduct similar to that engaged in by Respondent:

> Concerning the misrepresentation, we find guidance in *Atty. Grievance Comm'n v. Lane,* 367 Md. 633, 790 A.2d 621 (2002), in which we disbarred a lawyer for misrepresentations to his clients. As we described, the lawyer had "failed to diligently act on his clients' behalf and he then compounded this failure by engaging in a pattern of deceitful and lying conduct designed to conceal his lack of diligence." *Lane,* 367 Md. at 647, 790 A.2d at 629. This is similar to what Kane described in his testimony: that London met with him as many as 10 times about the 813 N. Carey Street matter, each time representing that he was working on transferring and filing the deed, but never completed the task. Kane testified: "After three to four years of getting the run around from [London], I was able to [complete the transfer myself] within days."

*Atty. Griev. Comm'n v. London*, 427 Md. 328, 355, 47 A.3d 986, 1002 (2012).

Moreover, Respondent disregarded repeatedly the legal needs of, and requests for communication by, Keene and Scoggins. "Violations of MLRPC 8.4(d) may occur when attorneys fail to keep their clients advised of the status of their representation or, more grievously, fail to represent diligently their clients." *Thomas*, 440 Md. at 555, 103 A.3d at 648 (citations omitted). "Disbarment is warranted in cases involving flagrant neglect of client affairs, including the failure to communicate with clients or respond to inquiries from Bar Counsel." *Thomas*, 440 Md. at 558, 103 A.3d at 649 (citations omitted).

In addition to these violations, each of which may warrant disbarment alone, Respondent's misconduct was compounded by a variety of aggravating factors, including the likelihood of repeating similar misconduct in the future.

> To be sure, a persistent or more egregious course of conduct in violation of our disciplinary rules may lead to much more severe sanctions. We have also recognized that an attorney's voluntary termination of the misconduct, accompanied by an appreciation of the serious impropriety of that past

conduct and remorse for it, is evidence that the attorney will not hereafter engage in such unethical conduct if permitted to continue practice. The likelihood of repetition is a factor to be considered in determining the appropriate sanction.

*Atty. Griev. Comm'n v. Paul*, 423 Md. 268, 285, 31 A.3d 512, 522 (2011) (citations and quotation marks omitted). Here, Respondent engaged repeatedly, without regret or apology, in misconduct. Respondent continues to deny any wrongdoing, blaming instead her client, her client's mother, the jail housing her client, employees of the Attorney Grievance Commission, and a variety of alleged personal problems and events, such as bouts of homelessness, illness, and a house fire.

Illustrating further the prospect of Respondent's continued transgressions, we suspended her license, in 2015, for similar violations:

> Here, Shuler violated MLRPC 1.3 by failing to act with reasonable diligence to ameliorate her failure to appear at oral argument; MLRPC 1.4(a)(2) by failing to inform Wilson that he had not prevailed in the appeal; and MLRPC 8.4(d) by essentially abandoning her representation of Wilson. The hearing judge found that Shuler was careless—*i.e.,* negligent—and that Shuler failed to advance Wilson's interests and caused him to lose the opportunity to timely petition for writ of *certiorari* in this Court.
>
> * * *
>
> As the hearing judge found, Shuler has demonstrated a pattern of misconduct; Wilson's was the second case in which Shuler both failed to appear at a court date due to illness and failed to sufficiently ameliorate her failure to appear. Although occasionally missing court dates due to illness may be excusable, doing so repeatedly within a five-month period and without sufficient amelioration is not. Despite having been informally admonished by Bar Counsel of the District of Columbia, Shuler once again missed a court date and failed to ameliorate her failure to appear; thus, we must do more than slap Shuler on the wrist to protect the public and to impress upon Shuler the importance of remedying failures to appear and managing health issues so that they do not cause violations of the MLRPC.

*Atty. Griev. Comm'n v. Shuler*, 443 Md. 494, 508-510, 117 A.3d 38, 47-48 (2015), *reconsideration denied* (July 24, 2015).

Respondent's history of violating our rules of professional conduct and lack of remorse or ameliorative action suggests that her continuance of the ability to practice law in Maryland represented a grave risk to the public and the legal profession. For the reasons set forth in this opinion, we issued a per curiam order disbarring Respondent on 3 April 2017.